```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL EVAN KEELING
a/k/a VINCENT OWENS,

                Petitioner,                                    REPORT AND
                                                               RECOMMENDATION
                -against-
                                                               04 Civ. 2206 (CM) (GAY)
ROBERT SHANNON, Superintendent,
Frackville Pennsylvania Correctional Facility,

                Respondent.
-----------------------------------------------------------X
```

TO THE HONORABLE COLLEEN McMAHON, United States District Judge:

Petitioner Michael Evan Keeling ("petitioner"), proceeding *pro se*, has filed a writ of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254. For the reasons set forth below, I respectfully recommend that the Court deny the petition in its entirety.[1]

**I. BACKGROUND**

On or about July 10, 1996, following a jury trial in Westchester County Court (Lange, J., presiding), petitioner was convicted of attempted murder in the second degree, attempted assault in the first degree, reckless endangerment in the first degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, criminal use of a firearm in the first degree, attempted

---

[1] My conclusions are based upon my evaluation of petitioner's claims on their merits, without regard to the issue of exhaustion. See 28 U.S.C. § 2254(b)(2).

robbery in the first degree and attempted robbery in the second degree.  See Respondent's Affidavit in Opposition ("Aff. in Opp.") at 2-3.

Keeling, who also used the alias Vincent Owens, was accused of the attempted robbery of a Roy Rogers Restaurant in Mount Vernon, New York on June 1, 1994. Petitioner and accomplice Shawn Pridgeon entered the Roy Rogers with the intention of committing a robbery.  Id. at 2.  During the commission of this attempted robbery, Richard Latimer, a security guard and also a former detective working in the restaurant intervened.  Latimer shot and killed Pridgeon during an exchange of gunfire between the two.  Id.  However, petitioner was able to flee from the area of the restaurant by car. Id.

During the Mount Vernon police investigation, the Nassau County Police Department notified Mount Vernon police that they were also looking for petitioner and Pridgeon because of their involvement in robberies committed in Nassau and Queens Counties.  Id.  Mount Vernon police used a photograph from the Nassau County investigation to identify petitioner and Pridgeon.  Id.  A warrant was issued for petitioner's arrest.  On November 18, 1994, petitioner was arrested in Pennsylvania for charges filed there.  Aff. in Opp. at 2.  He was convicted in Pennsylvania of aggravated assault on a police officer and eleven counts of car jacking.  Id. at 3.  He was sentenced to 32 ½  to 65 years.  Id.

Petitioner was indicted in Westchester County, New York  on January 22, 1995. Id. Westchester County authorities filed a detainer against him pursuant to the Interstate Agreement on Detainers ("IAD") after Pennsylvania completed its prosecution. Id.   He then filed a request for final disposition of indictments under IAD article III.  Id.

Petitioner executed a waiver of extradition and on November 28, 1995, he was released into the custody of Westchester County to stand trial. Aff. in Opp. at 3. He was assigned a Legal Aid Society attorney. Id.

On December 7, 1995, there was a pre-trial conference where the Westchester County District Attorney (the "People") provided consent discovery. Id. On December 21, 1995 attorney William Scott was substituted as petitioner's counsel. Id. On January 12, 1996 petitioner moved for omnibus relief. Id. On January 24, 1996 he filed a Notice of Alibi Witnesses naming Shawn Bruce, Marl Arrington and Thurman Briggs. Id. On March 19, 1996 by Decision and Order, Judge Lange granted discovery and inspection of eleven of twenty-four items requested by petitioner; denied his motion to dismiss; denied petitioner's motion to strike the People's CPL 710.30 notice and Alibi Demand and to strike language from the indictment; granted the motion for Brady material and reiterated the People's continuing obligation in that regard; denied the motion to suppress physical evidence upon the People's representation that no evidence seized from petitioner would be introduced; and granted the motion for pre-trial Sandoval, Huntley and Wade hearings. See Exh. 7.

The Huntley hearing motion was withdrawn. The Wade and Sandoval hearings were conducted and a jury trial began on May 2, 1996 with Judge Lange presiding. Ultimately, petitioner was convicted and sentenced as a persistent violent felony offender to 25 years to life on each of the accounts to run concurrently; and consecutive to the Pennsylvania prison term. Respondent's Memorandum of Law ("Resp. Memo.") at 1. He is presently incarcerated at the Frackville State Correctional Institute in the State of Pennsylvania.

Petitioner, by and through counsel, timely appealed the judgment of conviction to the Appellate Division, Second Department, on the following grounds: (1) failure to commence trial within 120 days after arrival in New York State; (2) improper Sandoval ruling prevented him from testifying at trial; (3) People's deliberate effort to call attention to his alleged aliases was improper and deprived him of a fair trial; (4) the lower court erred in permitting the prosecution to impeach a defense witness with evidence obtained from an unconstitutional arrest; (5) the conviction was against the weigh of the evidence; (6) the court erred by sentencing him as a persistent felony offender; (7) denial of effective assistance of counsel; and (8) the cumulative effect of all the mentioned errors deprived him of a fair trial. See Petition at ¶ 10.

By Decision and Order dated May 15, 2000, the Second Department affirmed petitioner's conviction and sentence. See People v. Owens, 272 A.D.2d 481, 2000 N.Y.Slip Op. 04906 (2000). Petitioner sought further review of the decision from the New York Court of Appeals on the grounds of (1) actual innocence pursuant to newly discovered evidence; (2) denial of Fourth Amendment rights; and (3) counselors failure to investigate and call witnesses. See Petition at ¶ 12. On October 26, 2000 the Court of Appeals denied leave to appeal. People v. Keeling, 95 NY2d 906, 739 N.E.2d 1152, 716 N.Y.S.2d 647 (2000).

On or about February 10, 2004, petitioner timely filed the instant Petition for a Writ of Habeas Corpus, wherein he asserts eight grounds: (1) denial of speedy trial rights pursuant to Interstate Agreement on Detainers Article IV (c); (2) newly discovered evidence withheld from petitioner which identified a second perpetrator of the crime; (3) ineffective assistance of counsel for failing to properly call witness and

interview/investigate any defenses; (4) ineffective assistance of trial counsel for failing to raise and properly preserve whether there was sufficient probable cause to arrest; (5) the lower court's Sandoval ruling impermissibly prevented petitioner from testifying in his own behalf at trial; (6) trial counsel was ineffective for his failure to object to the state's violation of their interstate agreement on detainers 120 days provision; (7) the lower court erred in permitting the prosecutor to impeach a defense witness with evidence ruled unconstitutionally seized from an illegal arrest; and (8) ineffective assistance of counsel for failure to properly relay the precise terms of a plea offer by prosecutors. See Petition at ¶ 12.

## II.  STANDARD OF REVIEW

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a). Subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, which amended 28 U.S.C. § 2254, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the petitioner establishes, in pertinent part, that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Further, pursuant to 28 U.S.C. § 2254(d)(2), a federal court may grant habeas relief when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." To the extent that a habeas petition challenges factual findings, "a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III.  DISCUSSION

1. Speedy Trial Rights

Petitioner asserts that his speedy trial rights were violated because his trial was not commenced within 120 days from his arrival in New York. Petitioner claims that prosecutors changed the trial date to May from June because they "recognized they had already exceeded the agreed time period in violation of the speedy trial rights...." Petition at ¶ 12. Petitioner claims that he was transported to New York on November 27, 1995 and the trial began May 2, 1996, making that 157 days in Westchester County custody. Petitioner's Traverse ("Traverse") at 5.

Respondent contents that petitioner's claim is meritless because it "states no federal question and does not demonstrate that the state courts' rejection thereof was contrary to or an unreasonable application of clearly established Supreme Court precedent." Resp. Memo. at 8. In addition, respondent argues that the time limit was tolled as a result of petitioner's requests for adjournments and filing of numerous pre-trial motions including an omnibus motion which was pending and which "fully consumed the 37 days... in excess of the 120 day period. Id. at 9, 12. Furthermore,

respondent claims that petitioner did not make the required proper objections to the scheduled trial date until well after sentencing. Id. at 12.

The IAD requires that a prisoner who is transferred from one state's custody to another state's custody or from federal custody to state custody, be tried on outstanding charges in the receiving jurisdiction within either 180 or 120 days of the execution of the detainer. Art III(a) allows 180 days and Article IV(c) allows 120 days if the charging jurisdiction requests only temporary custody of the prisoner. Article IV(c) of the IAD provides that "[i]n respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." If the prisoner is not tried within this time frame, the charges against him in the receiving state must be dismissed without prejudice.

Asserted violations of the speedy trial provisions of the IAD is not cognizable upon habeas review, absent evidence that petitioner was prejudiced by purported delay in beginning his trial. See 28 U.S.C.A. § 2254; Interstate Agreement on Detainers Act, §2, Art I, et seq., 18 U.S.C.A.App. In Reed v. Farley, 512 U.S. 339, 342, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) the Supreme Court held that a "state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement." See also Reilly v. Warden, 947 F2d. 43, 44 (2d. Cir. 1991) (holding that violations of the Interstate Agreement on Detainers are not cognizable claims in habeas corpus petitions under 28 U.S.C. §§ 2254 and 2255),

7

cert. denied, 502 U.S. 1115, 112 S.Ct. 1227, 117 L.Ed.2d 462 (1992).     Here, petitioner was in the custody of Westchester County from November 27, 1995 and the trial began on May 2, 1996.  Petitioner states that he had no "lawful responsibility to notify ... officials" and that the burden falls on the prosecutors to "ensure that ... petitioner was brought to trial within the 'mandated' speedy trial period" because it is the "[sole] responsibility" of the prosecutors. Traverse at 5.  Although petitioner was in Westchester County custody over 120 days, petitioner has not asserted or established the type of prejudice required by the Supreme Court in Reed.  Petitioner failed to provide specific examples of how the delay in the commencement of his trial prejudiced him in any way.  See United States v. Williams, 372 F.3d 96, 112-13 (2d Cir. 2004) (finding no violation of the defendant's right to a speedy trial where defendant had "failed to articulate prejudice from the delay with any specificity").

    Petitioner did not properly register any objections to his trial date when it was scheduled.  Petitioner concedes that he received a telephone call from his counsel on April 30, 1996.  His counsel communicated that the trial date had been rescheduled to begin on May 2, 1996 instead of June 1996.  Petitioner claims that counsel told him that the clerk of the court called and informed him of the new date.  Traverse at 7.  There is no record of petitioner or counsel objecting to the trial date.  Petitioner instead waited to make the IAD claim to the Appellate Division which ruled it was "without merit." Owens, 272 A.D.2d at 481.  Also, it is uncontested that petitioner filed several motions which tolled the time limits during their pendency.  New York v. Hill, 528 U.S. 110, 112 (2000).  Therefore, any delay was due to petitioner and there was no violation

of petitioner's right to a speedy trial under the IAD.  Accordingly, I respectfully recommend that petitioner's first claim should be dismissed on the merits.

2.  Alleged Brady Violation

Petitioner alleges that prosecutors failed to provide "critical identification information... of a possible second perpetrator of the crime."  Petition at ¶ 12.  Petitioner asserts that he became aware of this newly discovered evidence when he made a Freedom of Information Law ("FOIL") request to Mount Vernon after his conviction.  Id. Petitioner asserts that a Michael Roseboro was known to be Pridgeon's friend and that Roseboro could have been the other participant in the robbery.  Id.  Petitioner claims that witness descriptions matched that of Roseboro as well as that of Latimer, the security guard working at Roy Rogers that night.

Respondent indicates that the evidence in question was the "second page of a typed four-page report."  Resp. Memo at 13; See also Traverse, Exh. G.  Among other things, this report indicated that Pridgeon was "good friends with a Michael Roseboro" and "possibly the Mike Roseboro who is friends with the deceased Shawn Pridgeon." Resp. Memo at 14.  The report also discussed Reginald Bellamy, a defense witness, as a  "suspect for wheelman in the red car that drove petitioner away from the scene" and indicated that Vincent Owen and Michael Keeling are one in the same person.  Id. Respondents contend that there was no Brady violation since petitioner did not show that he was in fact deprived of Brady material.

In a criminal matter the prosecution has an obligation to disclose exculpatory evidence to the defendant.  Brady v. Maryland, 373 U.S. 83 (1967).  Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that

9

is useful to impeach the credibility of a government witness.  Giglio v. United States, 405 U.S. 150, 153-55 (1972).  In Giglio, the Supreme Court also held that "a finding of materiality of the evidence is required under Brady."  Id. at 154.  Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Strickler v. Greene, 527 U.S. 263, 280 (1999).  However, relief will only be granted if the prosecution's failure to disclose the exculpatory evidence "undermines confidence in the outcome of the trial."  Kyles v. Whitly, 514 U.S. 419, 434 (1995).  Furthermore, in United States v. Payne, 63 F.3d 1200, 1210 (2d Cir. 1995), the court ruled that "a new trial is generally not required when the testimony of a witness is corroborated by other testimony...."

Additionally, for a claim of newly discovered evidence to be successful, there are prerequisites which must be satisfied.  The evidence: (1) must be such as to probably change the result if the new trial is granted; (2) must have been discovered since the trial; (3) must be such as could not have been discovered before the trial by exercise of due diligence; (4) must be material to the issue; (5) must not be cumulative to the former issue, and; (6) must not be merely impeaching or contradicting the former evidence.  People v. Salemi, 309 NY 208, 215-216, 128 N.E.2d 377 (1955).

The Appellate Division found that petitioner's remaining contentions, including his Brady claim, were "without merit."  See Owens, 272 A.D.2d at 482.  Respondent asserts that the entire four page report was provided to the court as an *in camera* submission along with a redacted version for court comparison.  Resp. Memo at 14.  The court ruled that the redactions were proper and the redacted version was provided to the defense.

Id.  Therefore, no "newly discovered evidence" exists and no Brady violation occurred.

Additionally, petitioner's identity was corroborated by numerous other witnesses including various Roy Rogers employees, Frank Lora, a customer standing near petitioner, and security guard Latimer.  The evidence included proper pre-trial photo arrays and in court identifications. See Transcript of Wade Hearing, at 85.  Also submitted into evidence was a time-lapse videotape of the petitioner and corroborating fingerprint evidence.  Based on this record, I find that the petitioner has not demonstrated that a Brady violation occurred; or that the alleged violation would have influenced the outcome of his trial.  Accordingly, I respectfully recommend that petitioner's second claim should be dismissed as it is without merit.

3. Ineffective Assistance of Counsel

In his third, fourth, sixth and eighth claims, petitioner asserts that he was deprived of his right to effective assistance of counsel.  He contends that his trial attorney:  (1) failed to properly call witnesses and interview/investigate any defenses; (2) failed to raise and properly preserve the issue of whether there was sufficient probable cause to arrest; (3) failed to object to the state's violation of the Interstate Agreement on Detainers 120 days provision; and (4) failed to properly relay precise terms of the plea offer by prosecutors.  See Petition at ¶ 12.  Petitioner also makes similar claims against his appellate counsel but does not provide any support for the allegations.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that his attorney's performance "fell below an objective standard of

11

reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). See also Rivera v. Duncan, 00 Civ. 4923, 2001 WL 1580240, at *10 (S.D.N.Y. Dec. 11, 2001) ("The *Strickland* test applies to appellate as well as trial counsel."). Both prongs of the test must be met in order for petitioner to prevail. See United States v. Campbell, 300 F.3d 202, 214 (2d Cir. 2002). Further, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

Here, petitioner is unable to show that he suffered prejudice as a result of trial counsel's alleged actions. Petitioner claims that counsel failed to properly investigate or interview numerous witnesses, including Jacqueline Smith, a cashier at Roy Rogers, Monique Henderson and Michael Roseboro. Petitioner alleges that Smith was unable to make a positive photo identification of him and that Smith stated that she would have to see him in order to make a positive identification. Resp. Memo at 23. He claims that Smith's testimony had the potential of exonerating him and that she should have been a witness at his trial since she was on the prosecution's subpoena list. Traverse at 16. However, a police report shows that Smith was able to select petitioner's photo from an array but with some reservation. Resp. Memo at 23. Respondent asserts that petitioner's counsel made a tactical decision not to call Smith as a witness because of the risk of an in-person identification at trial. Id.

Petitioner argues that Roseboro and Henderson were not properly investigated or called as witnesses. Roseboro allegedly called Monique Henderson the morning

after the robbery and identified himself as Mike and asked about a Shawn.  Henderson informed police of this phone call.  Petitioner learned of Roseboro pursuant to a FOIL request submitted after conviction.  Respondent affirms that there is no evidence that Roseboro was even available to be called by trial counsel and that there were other positive photo and in-person identifications presented.

Here, defense counsel's decisions were supported by valid tactical considerations and, therefore, do not constitute ineffective assistance of counsel.  In general, "the decision whether to pursue a particular defense is a tactical choice which does not rise to the level of a constitutional violation... [T]he habeas court 'will not second guess trial strategy simply because the chosen strategy has failed...,' especially where the petitioner has failed to identify any specific evidence or testimony that would have helped his case if presented at trial."  Jones v. Hollins, 884 F.Supp. 758, 765-66 (W.D.N.Y.) (citations omitted), aff'd, 89 F.3d 826 (2d Cir. 1995). See also Rodriguez v. Senkowski, 03 civ. 3314, 2004 WL 503451, at *41 (S.D.N.Y. March 15, 2004).  Petitioner fails to demonstrate a reasonable probability that he would not have been convicted had these witness testified.

Morever, see Walker v. McGinnis, 99 Civ. 3490, 2000 WL 298916, at *7 (S.D.N.Y. Mar. 21, 2000) ("[A] thorough review of the trial transcript reveals that petitioner['s] counsel was, in fact, competent, tenacious, and thorough throughout the proceeding."); Harris v. Hollins, 95 Civ. 4376, 1997 WL 633440, at *6 (S.D.N.Y. Oct. 14, 1997) ("The record indicates that defense counsel aggressively . . . cross-examined witnesses . . ."); Sanchez v. Kuhlman, 83 Civ. 4758, 1984 WL 795, at *4 (S.D.N.Y. Aug.

23, 1984) ("Careful review of the entire transcript demonstrates that petitioner's trial counsel was both zealous and competent.").

Petitioner maintains that trial counsel failed to object to the state's violation of the IAD's 120 days provision. As explained above, violations of the IAD are not cognizable claims habeas corpus petitions under 28 U.S.C. § 2254 and there was simply no evidence that petitioner was prejudiced by the purported delay in beginning his trial. Trial counsel, apparently, knew the law and decided not to pursue this claim. Counsel are under ethical obligations not to file frivolous claims.

Next, petitioner claims that trial counsel did not communicate to him the precise terms of the prosecutor's plea offer. He states that his counsel admitted that "such cursory explanation fell below a reasonable professional standard[]." Petition at ¶ 12. Petitioner "openly concede[s] [that] the circumstances surrounding this case [] would have made it extremely difficult [] accepting a plea deal" but that counsel "failed in 'many' of the common duties in protecting while representing petitioner herein like accepting a plea...." Traverse at 31. Petitioner's mere assertions about counsel's ineffectiveness with respect to plea advice are insufficient to establish ineffectiveness of counsel. Petitioner fails to establish that counsel's performance fell below an objective standard of reasonableness.

Petitioner argues that trial counsel failed to request a Wade hearing concerning how the police learned of petitioner's identity through a "secondary police agency." Petition at ¶12. Petitioner contends that the local police did not have sufficient probable cause to arrest him based on the identification of another police department. However, the record shows that the trial court conducted a Wade hearing. The court

ruled that the pretrial identification procedures were not constitutionally impermissible. See Transcript of Wade Hearing, at 85. The probable cause claim lacks merit.

For the reasons discussed above, petitioner's ineffective assistance of counsel claims are meritless. Accordingly, I respectfully recommend that petitioner's motion to vacate on the ground of ineffective assistance of counsel should be denied.

4. Evidentiary Rulings

Petitioner's fifth and seventh claims alleged trial court errors on certain evidentiary matters. Generally, evidentiary rulings by a state trial court are matters of state law and do not present questions of constitutional dimension for habeas corpus review. See Roberts v. Scully, 875 F. Supp. 182, 189 (S.D.N.Y. 1995); see also Rosario v. Kuhlman, 839 F.2d 918, 924-25 (2d Cir. 1988) ("erroneous evidentiary rulings do not automatically rise to the level of constitutional error"). An erroneous evidentiary ruling does not deprive a defendant of his or her due process rights "unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).

A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling "bears the 'heavy burden' of establishing that the trial court's error constituted a deprivation of a constitutionally recognized right such as the right to a fair trial." Roldan v. Artuz, 78 F. Supp.2d 260, 276 (S.D.N.Y. 2000), citing Roberts, 875 F. Supp. at 189. Further, for improperly admitted evidence "to amount to a denial of due process, the item must have been 'sufficiently material to provide for the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'"

Dunnigan, 137 F.2d at 125, (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotations omitted)).

### a. Sandoval Ruling

Petitioner claims that the lower court's Sandoval ruling impermissibly prevented him from testifying at his own trial. See Petition at ¶ 12. The court ruled that petitioner's past convictions would be admissible if he chose to testify. Petitioner argues that the ruling prevented him from corroborating his alibi defense.

It is well-settled under New York law that a defendant who chooses to testify may be cross-examined about prior criminal acts that bear logically on his credibility. People v. Sandoval, 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974). In determining whether to admit evidence of a defendant's prior "bad acts," the court must balance the "probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant." Id. at 375. "The balancing under the prejudice vs. probative value test, state or federal, is left to the sound discretion of the trial judge." Green v. Herbert, 01 Civ.11881, 2002 WL 1587133, at *15 (S.D.N.Y. July 18, 2002) (citing cases).

Here, the Sandoval ruling balanced the competing concerns and allowed inquiry into certain prior convictions of the petitioner. See Transcript of Sandoval Hearing in Jury Selection Transcript at 2-18. In sum, the trial court's Sandoval ruling was proper and any alleged error clearly did not rise to a the level of a constitutional violation. Accordingly, as the Court cannot discern a question of constitutional dimension raised

by petitioner's claims, I conclude and respectfully recommend that his claims are without merit and should be dismissed.

b. <u>Witness Impeachment</u>

Petitioner claims that the trial court erred when it allowed the prosecution to impeach a defense witness, Reginald Bellamy, with evidence that they were "fully aware was unlawfully seized." Traverse at 29. Bellamy testified on direct examination that he was arrested by the police under the mistaken belief he was involved in the crime herein. During Bellamy's cross examination, the prosecutor asked him whether the police had discovered drugs in his possession when he was arrested. Resp. Memo. at 35. Defense counsel objected because the drugs had been suppressed as seized incident to an unlawful arrest; and the drug charge was ultimately dismissed on that basis. <u>Id.</u> The court overruled the objection after the prosecutor argued that the question was germane to the testimony given. <u>Id.</u> The prosecutor agreed to be bound by Bellamy's answer. Bellamy answered the question with a yes and there was no further questioning on that matter.

Petitioner has failed to show that the admission of the testimony in question was erroneous. In any event, petitioner has not demonstrated that the admitted evidence was so sufficiently material as to remove a reasonable doubt that the jury might have had. As set forth above, the evidence against petitioner was strong and consisted of both direct and circumstantial evidence implicating him in the robbery. Finally, petitioner has not shown that admission of this testimony was either "contrary to, or involved an unreasonable application of, clearly established Federal law[.] 28 U.S.C. §

2254(d)(1).  Accordingly, I respectfully recommend this claim should be dismissed as it is without merit.

c. <u>Sentencing</u>

Petitioner argues in his traverse that the sentencing court's determination that he was a persistent felony offender was erroneous.  Traverse at 32.  This claim was not made in the Petition for a Writ of Habeas Corpus and normally would not be considered.  However, petitioner did make this claim in his state court appeal to the Second Department.  Said court affirmed the petitioner's sentence. <u>See</u> <u>Owens</u>, 272 A.D.2d 481.  The court ruled that petitioner was properly sentenced as a persistent felony offender because of his two prior felony convictions.  <u>Id.</u>  Petitioner has not shown that any error was made in that regard.  No constitutional violation has been demonstrated.  Accordingly, I respectfully recommend this claim should be dismissed as it is without merit.

## III.  CONCLUSION

For the foregoing reasons, I respectfully recommend that the instant petition for a writ of habeas corpus be denied in its entirety.

## IV.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b)(3) of the Rules governing § 2254 proceedings, the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days

from receipt of this Report to file and serve written objections. See Rule 11 of the Rules governing § 2254 proceedings; Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Colleen McMahon at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Small v. Secretary of H.H.S., 892 F.2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable Colleen McMahon and not to the undersigned.

Dated: March 2, 2007
       White Plains, New York

                                Respectfully Submitted,

                                _____
                                GEORGE A. YANTHIS
                                UNITED STATES MAGISTRATE JUDGE


Copies of this Report and Recommendation have been sent to the following:

Hon. Colleen McMahon, USDJ

Michael Keeling, *pro se*

John Sergi, Esq.